UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JEROME ARON LAGE,
   Plaintiff,

vs.                       No. 08-1293

JOHN THOMPSON, et. al,
   Defendants

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 38]

### I. BACKGROUND

The plaintiff, a state prisoner, filed his complaint pursuant to 42 U.S.C. §1983 and has the following surviving claim against Bureau County Sheriff John Thompson: the defendant violated the plaintiff's Fourteenth Amendment rights based on living conditions at the jail. *See* December 3, 2008 Merit Review Order.

The defendant has filed a motion for summary judgement and the plaintiff has filed a response.

### II. FACTS.

The plaintiff did not directly respond to the defendant's statement of undisputed facts. However, based on the plaintiff's overall response to the dispositive motion, the following facts appear to be undisputed:

John Thompson says he is the Bureau County Sheriff and responsible for the operation of the Bureau County Jail.

Thompson says all his correctional officers are required by statute to successfully complete 240 hours of training at the Police Training Institute. The training includes criminal law, firearms, dispute resolution techniques and other items. Thompson says all of his full time jail officers have competed this training.(Def. Memo, Thomp. Aff, p. 2).

Thompson says the Bureau County Jail does not have fire sprinklers because it was built before there was a requirement. However, Thompson claims the jail does have a smoke detector system and fire extinguishers throughout the jail. Thompson says the detectors are

inspected once a year and all personnel are familiar with both how to use them and the jail's fire evacuation procedures. (Def. Memo, Thomp. Aff, p. 3).

The Sheriff says he is not aware of any asbestos in the Bureau County Jail and there are no asbestos containing products associated with the furnace or ventilation system. (Def. Memo, Thomp. Aff, p. 3). In addition, the sheriff says any plumbing problems in the jail are repaired "expeditiously" by a licensed plumbing contractor.

Glen Wamhoff says he is a mason contractor who was asked to perform repairs on two occasions at the Bureau County Jail. Wamhoff says he was asked to repair areas where inmates had been picking at the mortar and he covered those areas with epoxy so they would not be able to continue chipping at the wall. Wamhoff says based on his two jobs at the jail in 2008, he is familiar with the integrity of the walls in the jail and he finds that they are "structurally sound." (Def. Memo, Wamhoff Aff, p. 2)

Thompson says the Bureau County States Attorney reviews the legal materials in the jail's law library to insure they meet all state requirements. Thompson adds the jail library does have a copy of the Illinois Compiled Statutes. (Def. Memo, Thomp. Aff, p. 4).

Thompson says the Bureau County Board approved funds for the design of architectural plans to remodel the jail, but due to costs the proposal did not proceed. The Sheriff says he then sough federal grant support, but was the jail was not selected. In September of 2005, Bureau County was awarded $50,000 to repair jail cell doors and locks. Thompson says he also used his annual budget to pay for upgrades to the jail video system.

Thompson says the jail is inspected once a year by the Jail Detention Standards Unit (herein JDSU) of the Illinois Department of Corrections to see if it is compliance with state standards. The Bureau County Jail was inspected on November 15, 2007, and September 17, 2008, and was found to be in compliance with those standards. (Def. Memo, Thomp. Aff, p. 2).

Brad Besson is the acting manager of the Illinois Department of Corrections Jail and Detention Standards Unit. Besson says an annual inspection of a jail would rate the various performances of the jail and its staff, including: "

> administration, personnel, records, admission procedures, orientation, release procedures, classification and separation, housing, medical and mental health care, clothing, personal hygiene and grooming, food services, sanitation, supervision, security, safety, discipline, work by detainees, mail procedures, telephone procedures, visitation, social service programs, education, library services, religious services, commissary, and recreation and leisure time. (Def. Memo, Besson Aff, p. 3)

Besson inspected the Bureau County Jail on November 15, 2007. He found that all jail officers were trained in accordance wit the current law and all physical requirements were in compliance. (Def. Memo, Besson Aff, p. 3-4). The inspection examined cell size, plumbing, ventilation, potential for rodents or insects, library services, fire prevention and other areas.

Besson says if a jail is non-complaint, JDSU can refer the report to the Attorney General for remediation. Besson says his office has never referred the Bureau County Jail to the Attorney General's office due to non-compliance. (Def. Memo, Besson Aff, p. 5)

Mark Lendman is also employed by JDSU and inspected the Bureau County Jail on September 17, 2008. Lendman says he noted that all physical requirements were in compliance. In addition, the jail was in compliance with all other state standards. (Def.Memo, Lendman Aff. ).

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

IV. ANALYSIS

The defendant maintains that the plaintiff cannot demonstrate that his living conditions violated the constitution. Although the Eighth Amendment does not apply to pretrial detainees, pretrial detainees are entitled to at least as much protection as the constitution provides convicted prisoners. *See Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir.2003).

The Eighth Amendment protects an inmate from a governmental actor's "deliberate indifference to his basic needs." *Id*. at 620. "The Supreme Court has emphasized that 'no static test' can exist by which courts determine whether conditions of confinement are cruel and unusual." *DeMallory v. Cullen,* 855 F.2d 442, 445 (7th Cir. 1988) *citations omitted.* "In all cases, the determination as to whether prison conditions constitute cruel and unusual punishment turns on the totality of the circumstances." *Id.*

The plaintiff's response to the summary judgement motion makes no argument in support of many of the claims he made in his complaint concerning living conditions at the Bureau County Jail. Instead, he focuses on sleeping on the jail floor, insect bites, plumbing problems and inadequate medical care.

A. SLEEPING ON THE FLOOR/ INSECTS.

The defendant claims the plaintiff was never forced to sleep on the floor, but the plaintiff says he slept on the jail floor for a month an a half with dust and spiders. The defendant says the maximum capacity of the Bureau County Jail is 36 inmates, but in 2008, Thompson says the average population was 25. Thompson says during peak weekend intake, if the population were to exceed the maximum security, the overflow inmates would be provided with temporary bedding including a cot and mattress. (Def. Memo, Thomp. Aff, p. 4). Thompson claims an inmate has never been forced to sleep on the floor.

In addition, Defendant Thompson says the jail has an established rodent, pest and vermin program that includes a monthly visit from an extermination service to inspect/and or treat the jail. (Def. Memo, Thomp. Aff, p.3). Frank Merkley says his company offers the monthly pest control to the jail and he has never received any complaints or reports of rodents, pests or vermin inside the Bureau County Jail. (Def. Memo, Merkley Aff.,p. 1)

The plaintiff says the defendant's claims are not true. The plaintiff says he was also told there were 36 beds, but 12 of those beds were in cells that the jail could not use. In addition some beds were for work release, some were for segregation and some were for female inmates. Therefore, he says there were not really as many available beds as the sheriff claims.

The plaintiff says he did sleep on the floor of the jail with a mat and a sheet for a month and a half. He says "there was dust all over the place and ants and spiders crawling all over.."

(Plain. Memo, p. 2)    The plaintiff says the exterminators would come once a month, but it would only help for a couple of days, and then the spiders would be back.

Even if the plaintiff could demonstrate that he did sleep on the floor for a month and a half, he admits it was due to a lack of available beds. "Being assigned to sleep on a mattress on the floor is not itself enough to give rise to a claim of punishment. Plaintiff has failed to offer any evidence to show that the jail officials acted with deliberate indifference to plaintiff's basic human needs. Absent more, the fact that an inmate's mattress is on the floor rather than elevated is of no constitutional significance." *Gibson v. Ramsey*, 2004 WL 407025 at 5 (N.D.Ill. Jan. 29, 2004) *citations omitted. See also Hines v. Sheahan*, 845 F.Supp. 1265, 1269 (N.D.Ill.1994); *Powell v. Cook County Jail*, 814 F.Supp. 757, 759 (N.D.Ill.1993).

In addition, if there was dust and spiders on the floor, it also fails to rise to a constitutional violation. Courts have routinely recognized that "[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task," and that "failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." *Bowden v. Fairman*, 1992 WL 366905 at 1,(N.D.Ill. December 2, 1992) (*citing Harris v. Fleming*, 839 F.2d 1232 (7th Cir.1988). *See also Lynch v. Sheahan*, 1992 WL 245599 (N.D.Ill. Sept. 11, 1992) (absent showing that sleeping conditions were result of punitive intent, rather than overcrowding, fact that rats and roaches crawled over plaintiff while sleeping on a mattress on the floor of the Cook County Jail insufficient to survive summary judgment motion).

B. PLUMBING

The sheriff says any problems with plumbing at the jail were promptly addressed. However, the plaintiff says on one occasion when there was a problem with plumbing, he was moved into a cell with two other inmates. The plaintiff said he had to sleep on the floor and the toilet was broken so they could not flush it.   The plaintiff says at night they could use the toilet, but not flush it. The plaintiff says this lasted for three days.

Although unpleasant, the situation described by the plaintiff does not rise to the level of a constitutional violation.   The problem was temporary and the plaintiff admits the defendants were attempting to fix the plumbing during the three days. *See Jackson v. Kane County*, 2010 WL 333695 at 2 (N.D.Ill. Jan. 26, 2010)(plaintiff fails to allege the intermittent plumbing problems created "cruel and unusual" conditions of his confinement, claims are dismissed); *see also McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir.1993)("The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.")

C. MEDICAL CARE

The plaintiff also claims the defendants have inadequate medical care. To state a constitutional violation, the plaintiff must demonstrate that the defendants were deliberately indifferent to his serious medical needs. An Eighth Amendment claim based on inadequate medical care contains two elements: (1) the prisoner suffered an objectively serious harm that presented a substantial risk to his safety, and (2) the defendants were deliberately indifferent to that risk. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir.2006).

The plaintiff says he smashed his finger on September 4, 2008. The plaintiff said his finger was cut badly and he needed stitches. Instead, an officer gave him a bandage and said he would call the doctor. The plaintiff said it took two weeks before he saw the doctor and by that time his finger was nearly healed. The plaintiff says he still has a scar.

The plaintiff has presented no evidence in support of his claim including no medical records or other evidence of his alleged injury. The plaintiff also admits he received care immediately after he injured his finger, although not the level of care he thought was necessary. It is somewhat doubtful the plaintiff's his cut finger rises to the level of a serious medical condition.

More importantly, there is no evidence that the named defendant had any knowledge of his claim. A defendant cannot be held liable under 42 USC §1983 unless the plaintiff can demonstrate that the defendant's caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Also, the mere fact that an individual was a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 USC §1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). A supervisor cannot be held liable for the errors of his subordinates. The plaintiff has not demonstrated that the Sheriff had any knowledge of his cut finger or his need for additional medical care.

None of the plaintiff's individual claims rises to the level of a constitutional violation. Most of the conditions the plaintiff complains of were isolated incidents or temporary. The court cannot find that the totality of the conditions at the Bureau County jail constitute punishment or deprived the plaintiff of the minimal civilized measure of life's necessities. The motion for summary judgement is granted.

**ITS IS THEREFORE ORDERED that:**

**1) The defendant's motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 38] The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order. The parties are to bear their own costs. This case is terminated.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A**

**motion for leave to appeal** *in forma pauperis* **should set forth the issues the plaintiff plans to present on appeal.  See Fed. R. App. P. 24(a)(1)©.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 7th day of July, 2010.

       **\s\Harold A. Baker**

      _____
        HAROLD A. BAKER
      UNITED STATES DISTRICT JUDGE